### Ex Parte A. E. Heidingsfelder.

#### No. 5136.    Decided November 6, 1918.

**Contempt—Habeas Corpus—Cross-examination of Witness—Attorney at Law.**

Conceding that the manner of counsel in conducting the cross-examination of the witness was not such as to meet the approval of the court, etc., and that the court would have been well within his rights in admonishing counsel to mend both his manner and method, it does not follow that the court was authorized in advance of such admonition to enter a summary judgment for contempt and the relator is discharged. Citing Ex parte Snodgrass, 43 Texas Crim. Rep., 359.

From Harris County.

Original habeas corpus proceeding asking release from arrest under a judgment of a contempt of court, assessing a fine of one hundred dollars.

The opinion states the case.

*T. H. McGregor,* for relator.—Cited Daughty v. State, 33 Texas Crim. Rep., 135; Scott v. State, 43 id., 610; Kuehn v. State, 47 id 636; Duncan v. State, 42 id., 661; Ex parte Snodgrass, 43 id., 359.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, Judge.—The relator under arrest upon an order of the Criminal District Court adjudging him in contempt, seeks release upon an original application for writ of habeas corpus to this court.

The facts stated in the judgment show that one John Bockel was on trial for theft of cattle; that relator was his counsel, and that T. Y.

Parker was a witness for the State.   We copy from the order as follows:

"During the examination of said witness, and at a time in the examination where A. E. Heidingsfelder was cross-examining the witness, he representing the defendant, in an attempt to discredit and break down the witness' testimony before the court and before the jury insolently remarked to the witness: 'All you know about it is you want to put John Bockel in the penitentiary.'

"The court being of the opinion that said conduct upon the part of the attorney, A. E. Heidingsfelder, being insulting to a witness who was under process of this court, and therefore under protection of the court, was an indignity to the court itself, thereupon adjudged the said attorney in contempt of court, and then and there entered a fine of one hundred dollars against said attorney."

From the statement of facts accompanying the record it appears that the witness had testified in an examining trial relative to the same facts, and had given for the State testimony adverse to the defendant on trial which the relator, in representing the accused, was endeavoring to show, by cross-examination of the witness, was in conflict with previous statements on the examining trial, and to show that the witness was prejudiced against the accused.

The examination immediately connected with the alleged contempt we set out as follows:

"Q.   Now, Mr. Parker, I want to ask you whether any of your fence was down along there?   A.   No, sir; all the fence was up.   Q.   None of the gates were down?   A.   No, sir.   Q.   And none of them had been down, none of the fence and none of the gates?   A.   No, sir.   Q.   Didn't you make this statement: 'I found one of the gates down about a week ago.'   In the Justice Court didn't you make that statement?   Here it is right here (showing witness examining trial record): 'I found one of the gates down about a week ago.'   A.   Yes, sir.   Q.   Was that true or not?   A.   Yes, sir.   Q.   Then when you state to this jury that there was none down,—what caused you to make that statement?   Why did you tell this jury there were none down, and tell Judge Lusk down there they were down?   A.   That is two different times.   When I saw this gate down, it was about a week before this.   Q.   About a week before that trial?   A.   Yes, sir.   Q.   Isn't it a fact that gate was down the next day?   A.   Yes, sir; after he went through it.   Q.   It was down the next day?   A.   Yes, sir.   Q.   You are satisfied it was down the next day?   A.   Yes, sir; after he went through it.   Q.   Didn't you testify that it wasn't down the next day, down in the Justice Court, now do you tell the jury it was down the next day and you testified in the Justice Court it wasn't down?   Tell me about that.   A.   All I know about it, it was down the next morning.   Q.   All you know about it is you want to put John Bockel in the penitentiary?

"By the court:   I am going to fine you one hundred dollars, and I am going to make you pay it.   I have let you off with these things

two or three times, and the next time you do this, I am not only going to fine you but put you in jail."

Relator immediately said: "I did not mean anything by that; I am just showing the feeling and animus of this witness." Then proceeding with the examination asked: "You are prejudiced against Mr. Bockel, aren't you?" Answer: "I don't like a man that will steal cows."

We quote from the written argument of counsel: "The purpose of the offending question in this case, as shown from the record, was to develop the prejudice of the witness Parker. It is fundamentally permissible to show the animus of an adverse witness and no agency can so accurately demonstrate the hostility of the witness as can a cross-examination. The law recognizes this and gives to counsel the right of cross-examining the witnesses of his adversary. It is not a right *incident* only to the right to appear by counsel but it is a right *inherent* in and a substantive part of the right to appear by counsel. The right of cross-examination is a condition of the reception of direct testimony; that is, testimony is not admissible unless the opposing party have the right to cross-examine the witness. Mr. Thompson (on Trials, vol. 1, arts. 406, et seq.) says: 'The importance of the right of full cross-examination can scarcely be overestimated. As a test of the accuracy truthfulness and credibility of testimony, it is invaluable. It is the clear right of the cross-examining party to elicit suppressed facts, which weaken or qualify the case of the party examining in chief, or support the case of the cross-examining party.' * * * The right of cross-examination being established it is conceded that it must, or should, be exercised under the supervision of and controlled by the discretion of the trial court, subject at all times and in all things to the right of review by this court. 'Great latitude' should be allowed in cross-examination is the conclusion reached and stated by Mr. Thompson, supra, after an exhaustive review of many authorities. The control of the trial court—the discretion exercised—is a judicial control— a judicial discretion and when properly presented is always subject to review by this court.

"I am not unconscious of the fact that the committing judge in this case is possessed of eminent judicial qualifications; is of established and known patience, integrity and fairness; that he has brought to the bench which he occupies dispatch, decorum and dignity. But the limitations set upon this 'invaluable right' as to the manner, method and scope of its enjoyment are legal limitations and are to be dealt with by trial and appellate courts as any other legal question inherent in the case. . . .

"That there is a charmed circle of judicial dignity and decorum that surrounds a court, the invasion of which by counsel constitutes contempt, is not to be disputed. It is equally true that there is a sphere of duty and obligation belonging to counsel engaged in the defense of one charged with crime, the invasion of which by the court operates a denial of fundamental rights guaranteed to defendant and his counsel.

by the organic law of the land. There are rights inherent in the court which counsel must respect; there are also rights belonging to counsel which courts must not deny or abridge. The right to appear by counsel in a criminal case is fundamental in our government, and finds terse and apt expression in section 10 of our Bill of Rights."

Conceding that the manner of counsel in conducting the cross-examination was not such as to meet the approval of the court, and that the language used in directing his questions was not such as would have been chosen for the purpose by the trial judge, and that the court would have been well within his rights in admonishing counsel to mend both his manner and method, it does not follow that the court would be authorized in advance of such admonition to enter a summary judgment for contempt. If the views of the counsel and court do not coincide as to the procedure the court's views when declared must prevail, counsel reserving his point for review. But the fact that counsel pursued a method at variance with that which the court deemed correct, with no intended disrespect to the court would not subject him to penalty. In Ex parte Snodgrass, 43 Texas Crim Rep., 359, this court said:

"Courts will look with much allowance upon the zeal and partisanship of counsel representing their clients in the courts. Without zeal, and without an honest and fervent desire to have everything done and to do everything that can be done within his power that is honorable to promote the interests of his client, and secure him a fair and impartial trial, the object of counsel would be destroyed, and the bar would soon fall into disrepute." In Duncan's case, 42 Texas Crim. Rep., 661, it is said: "We wish to say that the power of the court is official—judicial, and not personal; and the relations of court and attorney are correlative. Courts may, will and should enforce judicial power and functions when necessary; yet this must be done in a manner sanctioned by law, and in consonance with judicial dignity, and with due regard to the rights of parties to be affected. Attorneys are bound and will be held to obey legal orders of courts; yet the court should invoke its judicial authority under the law, and in obedience thereto. The relationships of court and attorneys, bench and bar, are reciprocal. and each, in their proper sphere, is clothed with powers, rights and privileges which are to be recognized and respected by the other. These relations should be recognized and respected alike by the bench and bar, and, being carefully kept in view and followed as rules of action and conduct, will avoid friction."

Believing that the learned trial judge in his commendable desire to maintain the decorum of the court allowed himself in the present instance to adjudge relator guilty of contempt on insufficient facts we are constrained to order his discharge.

*Discharged.*