# NOVEMBER 19, 1941

No. 21913, Ex Parte James Bailey.
No. 21914, Ex Parte Jessie Williams.
No. 21915, Ex Parte Willie Robinson.
No. 21916, Ex Parte Peck Shirley.
No. 21917, Ex Parte Frank Hubert Jones
No. 21918, Ex Parte Frank Rochelle.
No. 21919, Ex Parte Earl Simpson.
No. 21920, Ex Parte Andy McCreight.
No. 21921, Ex Parte Forscellus Wilson.
No. 21922, Ex Parte Maurice Berry.
_____From Dallas County.

Delivered November 19, 1941.

The opinion states the case.

*Ivan Irwin,* of Dallas, for relators.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

On the 18th day of October, 1941, each of the relators named in the caption presented his original application to one of the judges of this court, praying for the writ of habeas corpus, alleging that each of them was restrained by the sheriff of Dallas County, Texas, under a contempt judgment entered against each of the relators by the Hon. Winter King, Judge of the County Criminal Court of Dallas County, and averring that the judgments holding relators in contempt were entered without notice to relators, and were void.

It appearing that the applications had been presented to the Judge of the Criminal District Court of Dallas County, and also to the Judge of Criminal District Court No. 2 of Dallas County, and the writ refused by each of said judges, it was directed that the applications be filed and same set down for a hearing as to whether the writs should issue as prayed for, and that pending such hearing relators should be released from custody upon furnishing bail in the sum of $200.00.

Relators were adjudged guilty of contempt at one hearing; the statement of facts and certificate of the trial judge appears in one instrument and is filed in the case first named in the caption, but should be considered in all the cases. Therefore, the cases will be consolidated and disposed of in that manner.

The order adjudging relator Bailey guilty of contempt reads as follows:

"Whereas, on this the 14th day of October, 1941, in open Court and in the presence of the Judge thereof, to-wit: the Honorable Winter King, during a regular session of said Court and while said Court was engaged in its regular business hearing and determining causes pending before it, one James Bailey was guilty of misbehavior in the immediate view and presence of said Court in this, to-wit:

"The Court was ready to call for trial a docket regularly set for this date on which there appeared some twelve or fifteen cases appealed from the Corporation Court of the City of Dallas charging various defendants with offenses of vagrancy and gaming.

"That while waiting for the return of the attorney representing said defendant, the Court being in session, Mr. W. K. Wilson, an Assistant District Attorney and an officer of this Court, walked back to the said James Bailey and asked him his name; that said James Bailey there stated to the said W. K. Wilson, officer as aforesaid, that his name was Charlie Duncan, the name given being not the name of said defendant but being the name of a person against whom was pending a charge of vagrancy, being numbered 2017 on the docket of this Court and being this day set for trial. That said defendant upon being questioned by the Court stated that such was not his name and that he had informed Mr. Wilson that it was his name, thus giving a false name and in this manner attempting to impersonate a defendant in a cause pending before this Court and regularly set for trial at this time, and to perpetrate a fraud upon this Court and to impede the administration of justice.

"Now, therefore, the said James Bailey still being in Court, it is ordered and adjudged by this Court that the said James Bailey, by reason of said acts was and is guilty of contempt of the authority of this Court, committed in its presence on this the 14th day of October, 1941;

"And it is further ordered that punishment for said contempt of Court is fixed at a fine of One Hundred ($100.00) Dollars and three (3) days' confinement in the County Jail of Dallas County, Texas, and the Clerk of this Court will issue a Writ of Committment commanding the Sheriff of Dallas County, Texas, to take the said James Bailey into his custody and restrain him until the payment of said fine of One Hundred Dollars ($100.00) has been made and said period of Three (3)

days has been served, or until the further order of this Court."

The orders adjudging the other relators guilty of contempt are in all respects the same save that in the judgments against the other relators it is recited that they gave to Wilson the names of various parties (which names are set out) against whom were pending charges of named offenses.

There was filed with the application for issuance of the writs of habeas corpus a statement of facts approved by the trial judge advising this court of the facts upon which the trial judge entered the contempt order. The following is certified by the trial judge as a part of the statement of facts:

"On the 14th day of October, 1941, the Court was in session and ready to call for trial a docket regularly set on this date on which there appeared some 12 or 15 cases appealed from the Corporation Court of the City of Dallas, charging various defendants with several offenses, principally, Vagrancy and Gaming. That at about 10:00 o'clock A. M., the Court being in session but not proceeding with any matter at the time, there came into the Court Room a group of some 15 to 20 negroes who took seats on the back row of the Court Room about a distance of 40 feet from the Court's Bench on which the Judge at the time was sitting. Mr. W. K. Wilson, Assistant District Attorney, in charge of the docket on this date walked to the back of the Court Room where said negroes were then seated, and walked along the row talking with them. This conversation, both his questions and their answers were not audible to the Court. He again walked along the line of the negroes, and then approached the Court's Bench and informed the Court that he had asked these negroes their names and that they had informed him, severally, that their names were the names of defendants who had cases set regularly on the docket for trial at that time, and further informed the Court that he had observed some of these negroes holding slips of paper in their hands and consulting or looking at these slips of paper in their hands and consulting or looking at these slips before answering when he inquired as to their names. That he had then asked them for the slips and had collected eight slips of paper with eight names written thereon, being the names of the defendants whose cases were set for trial at that time.

"The Court thereupon called the negroes one at the time before the Bench and questioned them, which questions and answers were recorded by the Court Reporter and appear in

the Statement of Facts transcribed by the Reporter, Mr. Todd Mitchell, which Statement of Facts has been transcribed and approved by the Court.

"This statement as to what occurred before the taking of the testimony by the Reporter, Mr. Todd Mitchell, is filed for the purpose of showing what transpired in this court on those cases."

Relator Bailey testified that his name was James Bailey, and that Troy Weatherall had brought him to the court house and gave him (Bailey) a slip of paper on which was written the name of Charlie Duncan; that Weatherall had told him (Bailey) to answer to the name of Duncan. The other relators, upon being sworn and questioned by the Court, gave their correct names and each of them said that Weatherall had either brought or sent them to the court house, giving them slips of paper upon which was written a name to which they were to answer.

The point is made that if relators were guilty of contempt at all it was constructive, and not direct contempt, and that the court had no right to summarily enter judgment against them without complaint being filed and upon proper notice. Cited as authority supporting the above contention are Ex parte Ratliff, 117 Tex. 325, 3 S. W. (2d) 406; Ex parte Landry, 65 Tex. Cr. R. 440, 144 S. W. 962; Ex parte McRae, 45 Tex. Cr. R. 285, 77 S. W. 211. As we view the record it becomes unnecessary to consider whether the *alleged* contempt was constructive or direct.

If a party could be held in contempt who has agreed to do an act which would be a contempt of court, or who had gone to the court room with intent to do a contemptuous act, or who had conspired to commit contempt, we would under the present record have cases of contempt. However, it is not the purpose or intent to act which controls, but the act itself (if any) must be such as amounts to contempt of the court. If the cases on the docket of the court which had been set down for trial had been called by the court, and relators or any of them had answered in place of the real defendants a completed act of contempt might be shown. So far as the record shows none of the cases in which relators were supposed to answer to defendants names were ever called for trial. If relators had sat on the "back row" of seats in the court room all day with the

slips of paper in their hands and said nothing to the court, certainly no contempt would have occurred. It is shown from the record that Mr. Wilson, Assistant District Attorney had "charge of the docket" at the time in question, but it is not shown that he was acting under instruction from the court when he interrogated relators, or if he was, that relators knew it. The court heard nothing that transpired between Mr. Wilson and relators, and knew nothing of it except as it was privately told him by Wilson, (the latter not having testified on the contempt hearing) or as it was repeated by relators when interrogated by the court, at which time they truthfully gave their correct names. It does not occur to us that under the circumstances here present the giving of the wrong names to the Assistant District Attorney, although highly reprehensible, was contempt of the court. A thing done in the hearing of the court itself might be contempt of the most serious nature, but when done only in the hearing of an officer of the court, might not be so characterized.

An examination of the record leads us to the conclusion that the writ of habeas corpus should issue as prayed for by all of the relators named. The complete record being already before us reflecting the facts upon which the judgments of contempt are based, it appears useless to set the matter down for further hearing. It is therefore ordered that each of the relators named in the caption of this opinion be discharged.