**Isreal WILLIAMS, Jr.**

v.

**W.J. ESTELLE, Jr., Director Texas Department of Corrections, et al.**

**Civ. A. No. 75–H–787.**

United States District Court,
S.D. Texas,
Houston Division.

July 5, 1983.

Otha T. Carpenter, Houston, Tex., for plaintiff.

Maury Hexamer, Asst. Atty. Gen., Austin, Tex., for defendant.

### ORDER

CARL O. BUE, Jr., District Judge.

The above-captioned cause comes to this Court for *de novo* review of evidentiary proceedings held before a jury and presided over by the Honorable Ray J. McQuary, United States Magistrate. It is a civil rights case in which the plaintiff, an inmate in the Texas Department of Corrections, alleges certain constitutional deprivations relating to his medical treatment. After evidence was considered and arguments heard, the jury returned a verdict in favor of the defendants, and the plaintiff moves now to set aside the jury's verdict on the ground of fundamental error. Additionally, in relation to this same case, the Magistrate recommended that plaintiff's former appointed counsel be held in contempt of court. For the reasons set forth below, plaintiff's motion for a new trial is granted, and a hearing shall be held at an early date to consider further the matter of contempt.

### I. Fundamental Error

Plaintiff's argument that he was denied a fair trial is premised on prejudice and surprise. Plaintiff claims that since the defendants tendered their pretrial order on the day of the hearing, listing therein their witnesses and exhibits, plaintiff was unprepared to rebut the medical evidence which was admitted. He claims that he was unaware of the specific witnesses and exhibits to be presented by defendants. A crucial fact in this regard is that plaintiff did not move for a continuance, and, indeed, at the beginning of the hearing he announced that he was ready to proceed.

It is well settled that a party is not denied due process due to alleged inadequate time to prepare for trial when that party does not move for a continuance. *United States v. Avila,* 443 F.2d 792 (5th Cir.), *cert. denied,* 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258 (1971); *Ward v. United States,* 344 F.2d 316 (10th Cir.1965), *cert. denied,* 385 U.S. 1014, 87 S.Ct. 729, 17 L.Ed.2d 551 (1967). That factor considered alone is not a sufficient basis for a new trial. However, in considering whether an error was harmless, the Court necessarily must look to the circumstances of a particular case. The entire record must be considered and the probable effect of the error determined in light of all the evidence. *Kotteakos v. United States,* 328 U.S. 750, 762, 66 S.Ct. 1239, 1246, 90 L.Ed. 1557 (1946) [same rule in substance as in civil case, 328 U.S. at 757 n. 9, 66 S.Ct. at 1244 n. 9]; 11 Wright and Miller, *Federal Practice and Procedure* § 2883 (1973).

The principle of fundamental fairness is not strictly limited to those situations in which a party has suffered arguable prejudice. The principle is designed to maintain also public confidence in the administration of justice. *United States v. Taylor,* 648 F.2d 565 (9th Cir.), *cert. denied,* 454 U.S. 866, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981). It is noted that courts are cautious to employ the principle of fundamental fairness to overturn a decision. The "plain error" rule should be invoked only in exceptional cases where it appears that the invo-

cation of the rule is necessary in order to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process. *United States v. Sheley,* 447 F.2d 455 (9th Cir.1971), *cert. denied,* 404 U.S. 1022, 92 S.Ct. 698, 30 L.Ed.2d 672 (1972).

▮ It is axiomatic that the function of a trial judge in a federal court, and likewise a federal magistrate in an evidentiary hearing, is much more than that of a mere arbitrator to rule upon objections and to instruct the jury. "It is his function to conduct the trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties." *Knapp v. Kinsey,* 232 F.2d 458, 466 (6th Cir.), *cert. denied,* 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956). Among his specific obligations in this regard, is a duty to admonish counsel when necessary for this purpose. But the admonishment should be effected by the use of temperate language. *Cromling v. Pittsburgh & Lake Erie R.R. Co.,* 327 F.2d 142 (3rd Cir.1963). The trial court must at all times strive "for that atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." *Glasser v. United States,* 315 U.S. 60, 82, 62 S.Ct. 457, 470, 86 L.Ed. 680 (1942).

▮ The entire judicial proceeding now under review can be fairly characterized as extraordinary. There are numerous examples in the transcript of outbursts and comments by the Magistrate that were most unprofessional as well as intimidating and demeaning to both counsel.

THE COURT: Okay, both of you attorneys come up here a minute. Let's excuse the jury just a minute. (Jury excused)

THE COURT: Okay you can go back to your seats over there. You know, I don't know—Both of you stand up—all three (3) of you. I don't know what all three (3) of you think you're doin' in here but this isn't a State Court and it's not a circus! Okay? Now if you want to prejudice your case by jumping up and down every single time you feel like that your —you're being prejudiced, well you just

go right ahead and do so. But I want to tell you that I've had a little experience as a lawyer and I think you're prejudicing your case by constantly objecting to everything this man says. If you keep it up, I'm going to listen to you and then at the close of it I'm going to allow him to rephrase and re-ask the questions without any objection whatsoever. Now if that's what you want, that's what I will do. But I'm also going to warn both of you, and particularly the Counsel for the Defense, that if you keep this up, then I'm going to hold you in contempt! I find that your conduct is disgraceful!

(Tr. 460–461.)

On the first day of the hearing plaintiff's counsel had lowered his voice so as not to be overheard by the jury while at a bench conference. The Magistrate became enraged at not being able to hear the attorney. Pounding the bench and using profanity, he rebuked counsel.

THE COURT: Yes, I agree with that. I mean I don't hear very well. Maybe it's just me, but everyone is mumbling around here. If they don't start speaking up, I'm going to declare a mistrial, and we're going to start all over again. Does everybody understand that? Now, I'm not going to say it again.

MR. _____: (Inaudible)

THE COURT: To hell with it! We're going have this damn trial right here and everybody's going to speak up! Now if I have to act crazy to get you to do it, I'm going to act crazy. Now I want people talkin' loud! We're not going to move these damn microphones around just because people don't want to speak up. Now go ahead. And you may stand back there over on your Counsel table also. Please.

(Tr. 98.)

Additionally, the Magistrate, after an extensive colloquy concerning an objection by plaintiff's counsel to a defense exhibit, tore pages from an exhibit and threw them on the floor in the presence of the jury. (Tr. 496.)

Although counsel for the defense prevailed in the case, they did not escape the scathing remarks of the Magistrate.

THE COURT: Well, if there's anything included in here that wasn't tendered to the Plaintiff I'm going to personally see to it that these two attorneys never practice law in a Federal or District Court again as long as they're attorneys. Okay? Does that sound fair?

(Tr. 492.)

THE COURT: Will you be quiet when I'm talking? I'm going to throw you out of this Court Room if you don't shut up when I'm talking. . . .

(Tr. 494.)

THE COURT: So, the reason that it wasn't brought up was due to your own incompetence, is that what you're saying?

MS. TATUM: No, sir, that's not what I was saying.

(Tr. 554.)

THE COURT: Okay, well if you want to keep objecting to every single question, you'd better watch your step! I'll tell you that. Okay?

MS. HEXAMER: Well I'd like to ask that the Court instruct Counsel for Plaintiff's not to make side bar remarks which are clearly inappropriate whether it be in Federal Court or—

THE COURT: I have not heard the "clearly inappropriate side bar remarks". I have heard you make several clearly inappropriate side bar remarks. In your objection, you're making arguments to the jury. From now on, whenever there's an objection, you stand up, say "may I approach the bench", you come up here and make your objection right here. There will be no further objections in front of this jury!

All right, call the jury in.

If you cannot act like civilized lawyers, I will treat you as if you're juveniles!
(Jury returns)

(Tr. 462.)

While there may be other similar episodes reflected in this seven volume transcript, these instances suffice for court purposes.

It should be mentioned also that a recommendation was made by Magistrate McQuary on the record at the conclusion of the evidence that one of the defense counsel be held in contempt and fined $500.00 for making a remark to opposing counsel in bad faith. (Tr. 557–564.) This recommendation was recently withdrawn by the Magistrate, and consequently the merits of the motion need not be addressed by this Court.

There were comments made by the Magistrate to indicate that he was determined that this particular hearing was going forward and that nothing would deter his bringing it to a conclusion. "Well, I intend to work however late it takes tomorrow night to get the evidence in unless it's absolutely impossible." (Tr. 190.) Moreover, the lawyers attended jury charge conferences until late at night, thereby significantly reducing the available time to prepare for the next day's evidence. While the Magistrate has a duty to expedite the disposition of cases and normally would be commended for doing so, the circumstances here raise a question as to how plaintiff's counsel could have been ready to proceed, even though he announced ready at trial. The hearing was originally scheduled to begin on Monday, October 18, 1982, but Larry Evans, plaintiff's attorney at that time, failed to appear. The Magistrate summarily relieved Mr. Evans of his duties and promptly appointed Otha Carpenter, Magistrate Botley's former law clerk, as plaintiff's counsel and gave him until Thursday, two and one half days later, to prepare for trial.

These events in combination are far more egregious than those found by the Third Circuit in *Cromling, supra,* to rise to the level of fundamental error. In that case the Court stated in reviewing the district judge's conduct of the trial:

We can perceive no legal justification for any of the verbal acts of the trial judge directed to Cromling's counsel set out in this opinion. The cited statements are not justifiable as bearing any substantial relation either to the issues presented by the trial or to any improper

conduct of counsel. Moreover, some of them at least, were harmful to the plaintiff's case. Considered as a whole, they appear to fall into an undesirable pattern which might have had the effect of causing the jury to consider the plaintiff's case other than on the merits. As we said in the opinion in *Sleek v. J.C. Penney Co.,* 324 F.2d 467 (3rd Cir.1963), a trial judge should be guarded in his comments.

327 F.2d at 152. As the Circuit Court held in that case and as this Court is compelled to hold, the verbal acts of the Magistrate at the hearing, as well as his decision to force the case to trial under these circumstances, are such as to cause prejudicial error to the plaintiff's cause.[1]

Accordingly, it is hereby ordered that the case be remanded to the magistrate for a new evidentiary hearing. Further, since there is such acrimony demonstrated on the record towards counsel by Magistrate McQuary, the Court orders that this case be transferred immediately to another magistrate for a new evidentiary hearing and/or other disposition.

## II. Contempt by Larry Evans

Magistrate McQuary has recommended that this Court hold Larry Evans in contempt of court and assess a fine against him for $500. This is based on the events surrounding the day on which the evidentiary hearing was scheduled to begin. Evans was previously appointed as plaintiff's attorney, and on October 18, 1982, the plaintiff, the defendants and their counsel, and all of the Magistrate's staff were ready and waiting for the hearing to begin. When Larry Evans did not appear, Magistrate McQuary sent his clerk to call. The clerk reached Evans at his office in Houston, whereupon Evans gave some unsupported reason that

defendants had filed a motion for continuance and that he thought it would probably be granted. The Magistrate discharged Evans from his duties and in Evans' stead appointed Otha Carpenter as plaintiff's counsel. Thereafter, a recommendation was filed by the Magistrate that Evans be fined $500 for his non-appearance and be held in contempt of court.

The recent Fifth Circuit case of *Thyssen, Inc. v. S/S Chuen On,* 693 F.2d 1171 (5th Cir.1982), gives an able explanation of the principles of contempt, applied in the context of non-appearance by a lawyer. As in the *Thyssen* case, this case does not concern civil contempt. The fine of $500 assessed against Evans is not coercive, that is, this "penalty" will not be automatically lifted on compliance. Further, that the fine is not remedial is shown by several facts. There has been no claim by either the plaintiff or the defendants that they have been damaged in the amount of $500. Neither side seeks to uphold the order. The use of the word "fine" has a punitive rather than remedial connotation. And, finally, the purpose appears to be to vindicate the authority of the court.

Since the contempt is criminal, it cannot stand without notice and a hearing. *Thyssen* at 1174. In the situation of attorney absence or tardiness, the hearing need not be formal or lengthy. Normally, a brief, informal oral notice and hearing will suffice. *Id.* at 1176. If at the hearing the facts show good cause or excusable neglect, no contempt has been committed. Rather, there must be intentional or willful action or flagrant disregard of an order of the court to be sufficient to support an adjudication of criminal conduct. *In re Monroe,* 532 F.2d 424 (5th Cir.1976).

Accordingly, it is hereby ordered that Attorney Larry Evans and the clerk of Magis-

---

1. Considerable effort has been expended by the judges comprising the Southern District of Texas to fashion a meaningful program for disposition of § 1983 prisoner civil rights cases through the use of magistrates. It goes without saying that the quality of justice expected in a Federal District Court must be maintained as these court proceedings are conducted by

the magistrates at the prison location in Huntsville, Texas. To take no action and thereby permit this record to stand would constitute a total abdication of this Court's function and duty to conduct an in depth *de novo* review of the record of the magistrate's proceedings to ensure that a fair trial was held.

trate McQuary's court who made the call to Evans on October 18, 1982, appear in this Court on August 16, 1983, at 9:30 a.m. to set forth the specific details underlying the situation at hand and to offer any other proof that may assist in resolving the issue raised by the Magistrate's recommendation.