**Ex parte William JACOBS.**

**No. 69174.**

Court of Criminal Appeals of Texas,
En Banc.

Feb. 22, 1984.

James C. Belt, Jr., Dallas, for appellant.

John R. Roach, McKinney, pro se.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an original habeas corpus action. Appellant is a Dallas attorney. The Honorable John Roach, Judge of the 199th District Court of Collin County, found applicant in direct contempt of court on May 23, 1983, during the felony theft trial of *The State of Texas v. Hipolito Perez.*[1] Relator's punishment was assessed at thirty (30) days in the Collin County jail and a fine of $500.00. The basis of contempt as reflected by the court's order was that the relator Jacobs failed and refused to participate in the voir dire examination of the jury panel, failed to strike the jury list, failed to obey the court's order to proceed to trial of the case, forced the declaring of a mistrial, and affronted the dignity and authority of the court, interfered with the orderly administration of the court's business, and engaged

---

1. The primary count of the indictment charged felony theft (not less than $200.00 nor more $10,000.00). Two prior convictions were alleged for enhancement of punishment. V.T.C.A., Penal Code, Sec. 12.42(d).

in "one or more of the alleged acts deliberately, willfully, and contemptuously" while in open court in the presence of Judge Roach.

■ Under the authority of Article 1911a(2)(c), V.A.C.S., the relator, as an officer of the court, had an independent determination of his guilt or innocence made by a judge other than the judge of the offended court. This hearing was held on July 6, 1983 before the Honorable Morris Ralston, retired district judge, sitting by administrative assignment. At the conclusion of the hearing Judge Ralston found relator guilty of contempt as set out in the original order of contempt, but reduced the punishment assessed to fifteen (15) days in jail and a fine of $300.00. Thereafter relator brought this habeas corpus action invoking the original jurisdiction of this court.[2]

The record before us shows that a motion to quash an earlier indictment against Hipolito Perez was granted. Perez was reindicted on March 3, 1983. Subsequently his retained counsel was allowed to withdraw. On March 21, 1983, Perez, pro se, and the prosecutor agreed to reset the case for April 11, 1983. On this latter date Perez appeared without counsel, but stated applicant Jacobs was his counsel. Applicant, who had not been retained, came to McKinney upon the call of the prosecutor, and agreed to go to trial on May 23, 1983.

On this latter date the State announced "ready" and applicant filed a motion for continuance alleging the lack of records of the case from Perez's former attorney, that Perez was a Spanish-speaking individual who could not speak English, and that applicant spoke no Spanish. The motion stated Perez needed a Spanish-speaking co-counsel "or a translator for the trial of this cause."

During the colloquy at the bench, applicant asked time to obtain a Spanish-speaking lawyer, stating he had difficulty communicating with Perez. Perez stated to the court he could speak English "a little bit,"

but could not read it. The prosecutor noted he had a brief conversation in English with Perez at an earlier docket call, and had no difficulty in conversing with him. He called the court's attention to the fact a State's witness was flying in from Houston, that the docket for the next jury trial date was already crowded, and the case had been given priority by the State.

The motion for continuance was denied, but Judge Roach announced he was appointing Mrs. Bea Irby as an interpreter to assist the applicant if necessary. When informed by the prosecutor that Mrs. Irby might be out of town, the judge told him to check and if necessary to get someone else here by "tomorrow morning to help Mr. Jacobs out, assuming one is needed, but I am not entirely convinced that's the case."

Over applicant's protest he was not ready to proceed, Judge Roach announced jury selection would begin in five minutes. Thereafter a jury panel was brought into the courtroom, and the prosecutor commenced the voir dire examination of the panel. After the prosecutor concluded and after a recess, applicant inquired of the judge if the interpreter had arrived and was informed she had not. The record then reflects:

"MR. JACOBS: Well, please the Honorable Court, gentlemen of the prosecution, ladies and gentlemen of the jury panel, my name is William Jacobs. I am the retained counsel for Hipolito Perez, the gentlemen sitting here. However, he is a Spanish-speaking American and unfortunately I am unable to speak Spanish, any foreign language, and presently as a result of that—and we do not have an interpreter present in the court—I am unable to communicate communication-wise so we cannot actively participate in this portion of the trial."

The prosecutor interrupted with an objection and requested a bench conference. After the bench conference, applicant, upon

**2.** In contempt proceedings there is no remedy by appeal. *Ex parte Cardwell,* 416 S.W.2d 382 (Tex.1967); *Arnold v. State,* 493 S.W.2d 801 (Tex.Cr.App.1973); *Ex parte Moorehouse,* 614 S.W.2d 450 (Tex.Cr.App.1981). See also 13 Tex.Jur.3rd, Contempt, Sec. 62, p. 270–271.

the judge's inquiry, stated he had no further statement or questions for the jury panel, but re-urged his motion for continuance. The jury panel was excused to allow the attorneys to strike their jury lists. Three prospective jurors were retained, however, for further interrogation out of the presence of the entire jury panel. Applicant did not question these prospective jurors, but again re-urged his motion for continuance.

The prosecutor then objected to applicant's ongoing objection in the presence of the jury panel members. A colloquy concerning the history of the case and settings followed. The judge then stated:

"The Court no more believes that Mr. Perez can't speak the English language than the Court can fly and I am going to tell you if you don't participate I will put you in jail. Make up your mind. Are you going to participate in this trial or not?

"MR. JACOBS: If the Court is requesting me to, I will do whatever the Court requests. I am not in no way trying to do what the Court requests (sic).

"THE COURT: We may very likely have a mistrial here already.

"MR. JACOBS: I will do anything the Court requests . . . ."

After further colloquy, the record shows:

"THE COURT: Let me finish. If you decline to participate in any portion of the trial if it goes forward and I'm going to carry out the Court's threat.

"Second of all, the Court is seriously concerned whether we've screwed up this case already by your activities with respect to this voir dire examination, but I note you are retained counsel, so it is just the Defendant's tough luck as far as I'm concerned.

"Strike your lists, gentlemen, and we'll have the jury panel back in here in a few minutes."

Thereafter, the prosecutor utilized three strikes out of his 10 peremptory challenges. Applicant did not strike any prospective juror.[3]

The court then sua sponte declared a mistrial, excused the jury panel, and held the applicant in contempt and assessed punishment. The court then sua sponte removed applicant, who was retained, as counsel for Perez and banned him from the courtroom during any further proceedings in the case.

On June 25, 1983, Perez, with other retained counsel, entered a guilty plea before the court to the primary theft count, and the enhancement paragraphs were abandoned by the State. Punishment was assessed at six years' imprisonment.

At the hearing under Article 1911a, Sec. 2(c), supra, before Judge Ralston, Judge Roach recounted the events described above. He stated that the applicant, after making a statement to the panel, did not continue the voir dire examination. He acknowledged he did not give a direct order to applicant to continue the voir dire examination. After three prospective jurors were further interrogated by the State in the absence of the jury panel and applicant continued his objection to the absence of an interpreter, Judge Roach threatened applicant with jail if he did not participate. Applicant thereafter did not strike the jury list. Judge Roach acknowledged he had no authority to tell either party how many of their 10 strikes or peremptory challenges to use. He stated applicant's failure to voir dire the jury panel and to make jury strikes were in part the basis of his contempt order. If there was another basis for the order, he did not reveal it. Judge Roach stated "the reason" he was forced to declare a mistrial was because Perez was not receiving the effective assistance of counsel. At another point he testified the failure to strike the jury list was "one aspect" of his declaring a mistrial, and at another point he

---

**3.** Article 35.15(b), V.A.C.C.P. (1973), provides in part:

"(b) In non-capital felony cases, the State and defendant shall each *be entitled* to ten peremptory challenges . . . ." (Emphasis supplied.)

testified the failure to voir dire was "part of it."

Applicant Jacobs testified Perez had contacted him a few days before April 11, 1983, and was told he (Jacobs) couldn't represent Perez if another lawyer was involved. On April 11, 1983, he went to McKinney and agreed to represent Perez and signed a pass slip for May 23, 1983. At that time he mentioned to Judge Roach the possibility of having to have a court interpreter. In all his conferences with Perez applicant had relied on an interpreter named Joe Clowser. He learned that Perez could neither read nor write English or Spanish, although Perez did speak a little English. On the weekend before trial Clowser had married and was not available, and the woman Perez brought with him on May 23rd did not speak English, and he (applicant) did not speak Spanish. Although not misled by the State or the judge, he did not believe the case would go to trial. Restitution had been made, and non-prosecution affidavits by the manager and owner of the store where the theft occurred had been filed. Faced with trial, he had filed his motion for continuance in view of the communication problem. He stated Perez was under the impression the case was going to be dismissed and didn't understand the consequences of the habitual criminal trial. He felt the court had erred in failing to provide an interpreter and did not want to waive error by his own actions in any "gung-ho participation" in jury selection. He testified he did not interrogate the three jurors who had been challenged for cause after the rest of the panel had been recessed because he was satisfied with the answers given to the prosecutor. He did not strike any prospective juror because after limited discussion with Perez he did not find any undesirable, and "they all looked pretty intelligent." Relator stated he was never ordered to proceed with the voir dire examination or to strike one or more jurors, that he did nothing to interfere with the process of the court, and did not try to force a mistrial, that he was not discourteous or disrespect-

ful to the court. He denied that he refused to proceed to trial.

Judge Roach and the District Attorney both testified they had brief conversations in English with Perez about trial dates, attorneys, etc., and they had no difficulty communicating with him. The attorney who represented Perez subsequently on his guilty plea testified he had no trouble talking to Perez in English, and there was no difficulty at the trial on the guilty plea in communicating with him.

Hipolito Perez, age 45 years, testified in English at the hearing that he could not read, that he did not know the meaning of "voir dire," and when certain excerpts of the voir dire examination of May 23rd by the prosecutor were read to him, he stated he did not know what had been read. He expressed the thought he would have understood if it had been read to him in Spanish. He acknowledged that Joe Clowser was a friend and often acted as an interpreter for him. On cross-examination he acknowledged he had filed a grievance against the applicant because he didn't have money to pay another lawyer as the applicant "was qualified out of my case."

■ The court's authority to regulate trials, and accordingly, to punish for contempt, is broad and plenary. *Ex parte Jones,* 331 S.W.2d 202 (Tex.Cr.App.1960). See also 13 Tex.Jur.3rd, Contempt, Sec. 34, p. 226. However, the power to punish for contempt should only be exercised with caution, and contempt is not to be presumed, but on the contrary, is presumed not to exist. *Ex parte Arnold,* 503 S.W.2d 529, 534 (Tex.Cr.App.1974), and cases there cited. See also *Ex parte White,* 274 S.W.2d 542 (Tex.1955); *Deramus v. Thornton,* 160 Tex. 494, 333 S.W.2d 824 (1960); *Ex parte Rogers,* 633 S.W.2d 666 (Tex.App.–7th Dist.–1982).

After the motion for continuance was overruled, and sensing possible error in the unavailability of an interpreter during the voir dire examination of the jury panel,[4] the

---

**4.** Article 38.30, V.A.C.C.P., provides in part: ■

"When a motion for appointment of an

applicant continued to object and renew his motion for continuance. Here the applicant did not voir dire the jury panel and did not strike the jury list as a matter of trial strategy, etc., and because he did not desire to eliminate any of the prospective jurors. There was no law which made it mandatory he do so, and there was no court order violated.

Article 1.14, V.A.C.C.P., provides a defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right of trial by jury in a capital felony case. The trial judge was without authority to hold the applicant in contempt for the two actions mentioned.

The fact that counsel pursues a method at variance with that which the court deems correct, with no intended disrespect to the court, should not be subject to a penalty for contempt. See *Ex parte Heidingsfelder,* 206 S.W. 351 (Tex.Cr.App.1918). To establish "contempt" of court, it is not the purpose or intent to act which controls, but the act itself must be such as amounts to contempt of court. *Ex parte Bailey,* 142 Tex.Cr.R. 582, 155 S.W.2d 927 (1941); *Ex parte Dowdle,* 165 Tex.Cr.R. 536, 309 S.W.2d 458 (1958).

The essence of "contempt" is that the conduct obstructs or tends to obstruct the proper administration of justice. *Ex parte Salfen,* 618 S.W.2d 766 (Tex.Cr.App.1981). While the conduct of the applicant as an attorney might not be altogether commendable, and while it might have been irritating to the trial judge, it did not hinder the forward progress of the trial or obstruct or tend to obstruct the administration of justice. Applicant did not refuse to obey any order to proceed to trial. There is no evidence to support the conclusory assertion in the contempt order that there was an af-

front to the dignity and authority of the court. If there was any disruption of the court's business, it was due to the mistrial declared by the court on its own motion, which cannot be justified by the failure to "voir dire" or to strike the jury list. See and cf. *Deramus v. Thorton,* 160 Tex. 494, 333 S.W. 824 (1960);[5] *Ex parte Bethurum,* 153 Tex. 563, 272 S.W.2d 85 (1954).

Throughout the hearing there was the expressed concern of Judge Roach that Perez, by applicant's actions, was denied the effective assistance of counsel. What was said in *Ex parte Pink,* 645 S.W.2d 262, 265 (Tex.Cr.App.1982), is here appropriate:

"Although we reserve judgment on whether a trial judge who believes an attorney is not rendering effective assistance to his client during the trial of a case may for that reason hold the attorney in contempt until it is properly before us, we harbor serious doubt that it is a proper use of contempt powers."

The relief prayed for is granted.

interpreter is filed by any party or on motion of the court in any criminal proceeding, it is determined that a person charged or a witness does not understand and speak the English language, an interpreter must be sworn to interpret for him. * * * Interpreters appointed under the terms of this article will receive from the general fund of the county for their services a sum . . . ." (Acts 1979,

66th Leg., p. 453, ch. 209, Sec. 1, eff. Aug. 27, 1979.)

It is observed that the application of the statute does not depend upon the indigency of the accused (party charged) or the witness.

5. *Deramus v. Thorton,* supra, held that a judgment of contempt without support in the evidence is void. See also 13 Tex.Jur.3rd, Contempt, Sec. 57, p. 262.