**Ex parte Randy TAYLOR, Applicant.**

No. 71051.

Court of Criminal Appeals of Texas, En Banc.

April 24, 1991.

Ronald L. Goranson, Dallas, for appellant.

Frank Long, Dist. Atty. and Alwin A. Smith, Asst. Dist. Atty., Sulphur Springs, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

OVERSTREET, Judge.

This is an original habeas corpus action. Applicant is a Dallas attorney who was found in contempt of court by the Honorable Lanny Ramsey, Judge of the 8th Judicial District Court for three separate actions occurring on March 3rd, 7th, and 24th, 1988. The record reflects that applicant was counsel for two defendants in *The State of Texas v. Tommy Charles Haynes, et al,* Cause Number 2749, et al. There were four defendants total and two separate attorneys represented the remaining two. Although a motion to sever was filed, it was denied and all defendants were tried together. The trial began in the first week of January, 1988 and concluded in the first week of May, 1988; it was unprecedented for Rains County as to its length (four months), the multiple defendants, and the use of special prosecutors. While the trial was often heated, requiring the judge to "cool off" the attorneys from time to time, applicant was the only attorney held in contempt. Judge Ramsey took each contempt under advisement and made a preliminary order of contempt in all three on December 14, 1989 following a November 6, 1989 hearing. Therein, the punishment was assessed at three days confinement in the county jail and a $500 fine for each offense. Pursuant to Government Code § 21.002(d), V.T.C.A., V.A.C.S., Judge George Walker, sitting by designation of the Presiding Judge of the First Administrative Judicial District for purposes of the evidentiary hearing, adjudged applicant guilty of contempt of court on January 15 and 16, 1990 in the three cases styled *Ex Parte Randy Taylor,* Nos. 5877, 5878, and 5879.

On January 27, 1990, Judge Walker entered a judgment of contempt against applicant in each of the three actions and imposed punishment for each at $500 to be paid within five days of January 27, 1990, or applicant was to be imprisoned in the county jail of Rains County, Texas until said fine is paid. This habeas action followed. Applicant presents three reasons for granting his writ on each judgment of contempt. The three allegations are identically applied to each respective contempt. The first reason for granting the writ is stated as: There was no evidence to show that the alleged conduct was indignant or interfered with the orderly presentation and conduct of the trial.

I.

The first alleged act of contempt on March 3, 1988 arises from applicant's conduct during a cross-examination of one of the law enforcement officers:

Q. [By Randy Taylor]: All right. Since Mr. Hagood was kind enough to let us use his side of the table here to be closer

to the jury, whenever I get to something that you don't consider to be a legitimate toiletry item and lay it out here on this table—this yellow pen here, that's mine, and this over here, from here on over, that's Mr. Hagood's and Mr. Chapman's. Whenever I get to something you don't consider a legitimate toiletry item you give me a holler, will you please?

A. [By Witness]: Would it be any distinction whether it's a man's toiletry item or a lady's toiletry item?

Q. I don't know. Just toiletry items, okay, or **maybe somebody that might go both ways, you know what I mean?**

A. I think I do.

This occurred after 4:30 in the afternoon. Upon hearing the statement, "go both ways," Judge Ramsey recessed court for the day and admonished the jury for return the next morning. Then the following interchange took place: (After stating to Mr. Taylor that his last statement before the jury was improper, the court continues ...)

"Before I recessed the jury because you made an overly dramatic demonstrative zipping of the bag down after having a conversation with Mr. Hagood....

Now, a statement like on the record about going both ways, and so forth, that just has no place in a court of law in a case like this. I want us to, first, to conduct ourselves before this jury in a way that will not demean the dignity of the attorneys or the Court or the jurors, the spectators. And in my opinion, that type of statement made by an attorney or a question is not proper and is contemptuous and is beneath the dignity of the attorney or the jury or the Court. I'm going to take under advisement about whether or not to hold you in contempt because I don't want to do that....

MR. TAYLOR: First off, I said to the witness when you get to where you see something that is not a toiletry item you holler. And then he asked the question, do you mean men's or women's. And I, in a facetious manner that probably was not entirely appropriate, answered, or somebody that goes both ways. There

are people that say ten percent of the male population of the United States today is gay, and there are men that wear women's products. There are men that use products that are associated with women's facial care.

THE COURT: Well, there is no evidence of that in this case.

MR. TAYLOR: I understand that, but there is no evidence that is not the case either.

You see, we're talking about toiletries and the State has made an issue of it.

\* \* \* \* \* \*

THE COURT: I'm saying I don't want you making a statement like that anymore."

▆▆▆ The Court's authority to regulate trials, and accordingly to punish for contempt, is broad and plenary. *Ex Parte Jones*, 331 S.W.2d 202 (Tex.Cr.App.1960). However, the power to punish for contempt should only be exercised with caution, and contempt is not to be presumed, but on the contrary, is presumed not to exist. *Ex parte Arnold*, 503 S.W.2d 529, 534 (Tex.Cr. App.1974), and cases there cited. See also *Ex parte White*, 154 Tex. 126, 274 S.W.2d 542 (1955); *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824 (1960); *Ex parte Rogers*, 633 S.W.2d 666 (Tex.App.—Amarillo 1982).

▆▆▆ The essence of "contempt" is that the conduct obstructs or tends to obstruct the proper administration of justice. *Ex parte Salfen*, 618 S.W.2d 766 (Tex.Cr.App. 1981); *Ex parte Jacobs*, 664 S.W.2d 360 (Tex.Cr.App.1984). Given all the circumstances in the present matter, we cannot conclude that the phrase "... or maybe somebody that might go both ways ..." was disrespectful or disrupting to the trial court to such an extent as to require contempt. Furthermore, "[t]he fact that counsel pursues a method at variance with that which the court deems correct, with no intended disrespect to the court, should not be subject to a penalty for contempt. See *Ex parte Heidingsfelder*, 206 S.W. 351 (Tex.Cr.App.1918). To establish 'contempt' of court, it is not the purpose or intent to

act which controls, but the act itself must be such as amounts to contempt of court." *Ex parte Bailey*, 142 Tex.Cr.R. 582, 155 S.W.2d 927 (1941); *Ex parte Dowdle*, 165 Tex.Cr.R. 536, 309 S.W.2d 458 (1958).

In the present matter, applicant's examination of the witness was near the evening break after 4:30 p.m. The court's decision to break for the rest of the day did not cause a significant delay in this four month long trial. While the applicant's statement may have been inappropriate, he did in fact concede such, his explanation of it was not wholly implausible in the context of the examination.[1] During the course of the trial, many "off the cuff" statements were made as explained by applicant between him and the same witness (Mr. Easterwood, who was a police officer), to-wit:

> "Me and Mr. Easterwood had that ongoing—I think he was on the witness stand nine days on direct and crossexamination. Like, one time there was some dope cut up in front of the jury, and I—and I cut it up with a razor blade. And he said, 'Boy, you sure know how to do that well, don't you?' We had that kind of ongoing dialogue."

■ Whether applicant's statement offended the court is not the test in contempt actions but the act itself must be shown as intentionally disrespectful. "Trial courts ... must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Brown v. United States*, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). This statement, in the context of the witness' examination, fails to show disrespect in the manner of which contempt actions are made.

## II.

■ The next alleged action for which applicant was held in contempt occurred on March 7, 1988. The court's judgment states:

"... the contemnor, Randy Taylor, after having been ordered and admonished by the Court not to make any comment in regard to what the bible or any other source states with regard to what the guilty or innocent do; in particular, but not by way of limitation, any comment to the effect that the guilty flee and the innocent stand tall; did, in violation of such previous court order speak the following: 'Have you ever heard the biblical expression the guilty flee when no man pursueth while the righteous are bold as a lion?' "

The prosecution's motion in limine, which was extensive, was filed on January 4, 1988 and did contain a request for a hearing outside the presence of the jury before defense counsel could make any comment regarding what the Bible states with regard to what the guilty or innocent do. The following examination by Mr. Taylor is the subject of the contempt:

Q. [By Mr. Taylor]: And this would be basically going from south to north.

As you started going north here did it sound like somebody, about the same time, started going north from inside the trailer?

A. [By one of the arresting officers]: I couldn't say.

Q. You couldn't say at what point in time you began to hear the footsteps in here?

A. No, I could not.

Q. So, if I put a question mark about footsteps in here, where you first started hearing them inside the trailer running parallel with you, you don't remember specifically when and where that was?

A. No, I do not.

Q. But you do know by the time you got to this point down here that you could clearly hear them?

A. Yes, sir.

Q. And you do know that Stokes and Wolfe came out of the trailer?

---

1. During the hearing on contempt it was established that statements of a sexual nature had surfaced in that some of the defendants had rented "hard core x-rated" movies while together; some had written letters of a sexual nature.

Applicant explained that some items in the bag were usable by either sex and that at least one sexually-oriented item was in the bag, all of which were admitted into evidence.

A. Yes, sir.

Q. **Have you ever heard the biblical expression "the guilty flee where no man pursueth while the righteous are bold as a lion"?**

MR. SAWYER [co-defendant Stokes' attorney]: I'm going to object, your Honor, to the last remark.

THE COURT: Sustained.

The jury was then instructed to disregard the remark. The trial court then recessed the jury for lunch. During the jury's absence, Mr. Sawyer's motion for a mistrial was overruled. One of the special prosecutors informed the court of the motions in limine. In response, Mr. Taylor explained:

"Judge, the first day of trial would have been sometime around the middle of January. I have got that which is the biggest salesman's case I could find full of papers that have been created by the trial of this case. If it was filed and I was provided a copy, I'm sure that I've got a copy someplace in that file. I have no recollection of ... any such motion being granted. However, there's only been a hundred and fifty or two hundred or something like that granted."

This transaction occurred some two months into the trial. It was established that there were an abnormally large number of hearings outside the presence of the jury during the course of trial. The above discussion took less than 20 minutes immediately prior to an hour lunch break. We conclude that this conduct did not interfere with the orderly presentation of the trial.

We now turn to whether applicant's violation of the motion in limine was such as to merit contempt. The nature of contempt actions during the course of an attorney representing a client is not to be taken lightly. And while it is more often noted that the attorney's conduct must not hinder forward progress of the trial or obstruct administration of justice, *Ex parte Pink*, 746 S.W.2d 758, 762 (Tex.Cr.App.1988), flagrant disregard of an order may also be a consideration. Cf., *Williams v. Estelle*, 566 F.Supp. 1376, 1380 (D.C.Tex.1983), which states, "[i]f at the hearing the facts show good cause or excusable neglect, no contempt has been committed. Rather, there must be intentional or willful action or flagrant disregard of an order of the court to be sufficient to· support an adjudication of criminal conduct." Given the nature of the discussion before the bench immediately following the statement coupled with the applicant's hearing on the contempt, we conclude there was not flagrant disregard of the court's order nor an obstruction of administration of justice.

### III.

■ The third and final allegation of contempt occurred on March 24, 1988 when the following transpired: After the conclusion of the cross-examination of a prosecution witness, the trial court retired the jury for the day. The jury left the courtroom. The following then occurred:

THE COURT: Let me see the lawyers.

MR. TAYLOR: Judge, I'd like to ask the Court to provide Mr. Wilemon, the Highway Patrolman that first went in, to testify in the morning for further direct examination of this witness by me.

MR. HAGOOD: If he's in town, Judge, I'll certainly do my best to get him here.

THE COURT: I think we have an understanding on that point, don't we?

MR. HAGOOD: Yes sir, if he's in town.

MR. TAYLOR: Ain't if he's in town. I never heard if he's in town. That's the first I've heard of that stipulation.

THE WITNESS: I need to leave town tomorrow, too.

MR. HAGOOD: Talk to that man there, hoss, don't look at me.

MR. PATTON [attorney for one of the co-defendant's]: Your Honor, I'm going to object.

THE COURT: Okay. Okay. I want all the attorneys to sit down and be quiet. No more talking; no more words.

MR. TAYLOR: I'm sorry, Judge?

THE COURT: No more words.

Mr. Taylor?

MR. TAYLOR: May I speak with my client, Judge?

THE COURT: (indicating).

Mr. Taylor?

MR. TAYLOR: Yes Sir.

THE COURT: You are not talking to your client, are you, after I told you not to?

MR. TAYLOR: Sir?

THE COURT: You are not talking to your client after I told you not to?

MR. TAYLOR: Well, what I was asking, Judge, to do, quite honestly, was to view some evidence where I could see about finishing my cross examination tomorrow.

THE COURT: But I told you not to talk.

MR. TAYLOR: I didn't know it meant to my client.

THE COURT: I told you not to talk to your clients.

MR. TAYLOR: Will you let me know when I can talk to my clients?

THE COURT: Yes, sir.

At the hearing for contempt, Judge Ramsey testified that by "indicating" he was moving his head from side to side to indicate "no."

Applicant testified to not having any recollection one way or the other of what Judge Ramsey was indicating. It is undisputed that Mr. Taylor's words to his client were inaudible to the court. It is also undisputed that the particular client to whom he was speaking was removed from the court and remitted to custody daily. The jury was not present. Given such facts, we have stated on several occasions that "[w]hile the conduct of the applicant as an attorney might not be altogether commendable, and while it might have been irritating or even exasperating to the trial judge, it did not hinder the forward progress of the trial or obstruct or tend to obstruct the administration of justice. *Ex parte Pink*, supra, and *Deramus v. Thornton*, supra. See also *Ex parte Duncan*, 42

Tex.Cr.R. 661, 62 S.W. 758, 762 (1901), which appropriately places such action in perspective:

"We wish to say that the power of the court is official,—judicial, and not personal,—and the relations of court and attorney are correlative. Courts may, and will, and should enforce judicial power and functions when necessary; yet this must be done in a manner sanctioned by law, and in consonance with judicial dignity, and with due regard to the rights of parties to be affected. Attorneys are bound and will be held to obey legal orders of courts, yet the court should invoke its judicial authority under the law and in obedience thereto. The relationship of court and attorneys, bench and bar, are reciprocal, and each, in their proper spheres, is clothed with powers, rights and privileges, which are to be recognized and respected by the other. These relations should be recognized and respected alike by the bench and bar, and being carefully kept in view and followed as rules of action and conduct, will avoid friction."

We find that applicant's conferring with his client during this period was not indignant nor an interference meriting contempt. "Contempt is strong medicine. Use it cautiously and only as a last resort." *Willson v. Johnston*, 404 S.W.2d 870 (Tex. Civ.App.—Amarillo 1966, no writ).

The relief prayed for is granted. The judgments of contempt are set aside.

McCORMICK, P.J., concurs in result.