

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### AP-75,965

### EX PARTE ADAM REPOSA, Applicant

On Application for a Writ of Habeas Corpus
Relating to Cause No. 07-203418 of the
County Court at Law Number 6 of Travis County

*WOMACK, J., delivered the opinion of the Court, in which KELLER,
P.J., and PRICE, JOHNSON, KEASLER, HERVEY, HOLCOMB, and
COCHRAN, JJ., joined. MEYERS, J., dissented.*

This is an original application for a writ of habeas corpus in a contempt case.

The applicant, an attorney in Austin, was found in contempt of court by the Honorable

Jan Breland, Judge of County Court at Law Number 6 of Travis County, for contumacious

conduct during a misdemeanor trial. As an attorney representing his client in a case, the applicant

was considered an officer of the court at the time he was found to be in contempt.[1] Pursuant to

---

[1] *See Ex parte Rose*, 704 S.W.2d 751, 754 n.2 (Tex. Cr. App. 1984); *Ex parte Pink*, 645 S.W.2d 262, 263
(Tex. Cr. App. 1982).

Government Code Section 21.002, the applicant was accorded a hearing to determine his guilt or innocence.[2] The Honorable Paul Davis, the Judge assigned to preside over the hearing, found the applicant guilty of contempt and assessed his punishment at ninety days in jail. Because there is no remedy by appeal for contempt proceedings, this habeas action followed.[3] At the applicant's request, we set bail pending the disposition of this application.

The applicant here seeks to challenge the judgment of contempt and the sentence on five grounds. The first four grounds seek relief from the order adjudging him in contempt; the fifth ground is directed at the sentence. We find them to be without merit.

**Facts**

On March 11, 2008, the applicant appeared before Judge Breland as counsel for a defendant in a criminal case. Judge Breland testified at the contempt hearing that the applicant had arrived late that day, sending an assistant in his place that morning. The applicant had four or five cases on the jury docket. The client had been in jail since November, and his was one of the older cases on the docket. The applicant arrived in a hurried manner in the early afternoon. He told Judge Breland his client wanted a trial, and the client was brought into the courtroom. Judge Breland testified that she used the same procedure that she uses with every defendant; that is, she called the defendant to the bench to see if he wanted a trial and to review the range of punish-

---

[2] GOV'T CODE § 21.002(d) provides: "An officer of a court who is held in contempt by a trial court shall, on proper motion filed in the offended court, be released on his own personal recognizance pending a determination of his guilt or innocence. The presiding judge of the administrative judicial region in which the alleged contempt occurred shall assign a judge who is subject to assignment by the presiding judge other than the judge of the offended court to determine the guilt or innocence of the officer of the court."

[3] *See Ex parte Thompson*, 273 S.W.3d 177, 181 (Tex. Cr. App. 2008); *Ex parte Eureste*, 725 S.W.2d 214, 216 (Tex. Cr. App. 1986).

ment and the State's plea-bargain offer with him. When the client was brought out into the courtroom, she heard him say, "I don't want a trial . . .. I just want to get out of jail."

The record of the proceedings begins at this time, with the applicant telling his client, "Don't do it. Don't do it. If you plea, I'll withdraw. You've come this far. Don't do it." Judge Breland began to talk with the defendant and told him, "I know that Mr. Reposa has explained to you the pros and cons and benefits and non-benefits of going to trial. I'm just going to ask the prosecutor – and we have got a jury. They are out there, and we will have a trial today if you want to." In the contempt hearing, Judge Breland testified that, at this point, she saw the applicant "violently shaking his head while [she was] trying to talk to [his client]." The record of the proceedings reveals that this exchange followed:

> JUDGE BRELAND: Mr. Reposa, I'm going to ask you, don't be distracting him, please –
>
> REPOSA: Not trying to distract him.
>
> JUDGE BRELAND: – when I am speaking to the defendant.
> I am going to ask [Prosecutor] Swaim, who I am sure has reviewed this case, if Mr. Williams wanted to plead no contest today, what would the State ask for?
>
> SWAIM: 30 days, court costs, lose driver's license for 90 days, minimum – for the record, Your Honor, Mr. Reposa continues to whisper in his client's ear while I am talking.
>
> JUDGE BRELAND: Mr. Reposa, out of here. Right now. I saw what you did. That is contempt.

According to Judge Breland's testimony, after Swaim had protested that the applicant continued to whisper in his client's ear,

> [The applicant] was standing a couple of feet from the front of the bench and, very clearly, I could see his right hand at his – a few inches from his waist and his hand

was in sort of a fist and he moved his hand very quickly up and down for maybe five times. And as he did that, his eyes were rolling . . . and he was looking at me.

Judge Breland further testified that she recognized this gesture as a simulated masturbation gesture.

After the applicant left the courtroom, Mr. Gentry, another prosecutor in the courtroom at the time, described for the record the events he had witnessed.

> GENTRY: Essentially, when [Swaim] said [the applicant] was whispering in his client's ear, [the applicant] made a motion with his hand – gestured – not gestured, but –
>
> SWAIM: Masturbatory motion?
>
> GENTRY: Masturbatory motion towards [Swaim] in the Court's general direction.
>
> SWAIM: Is that what you saw, Judge?
>
> JUDGE BRELAND: Yes. And rolled his eyes and looked straight at me.
>
> SWAIM: Your Honor, the State would move that you hold Mr. Reposa in direct contempt of Court for an obscene gesture made –
>
> JUDGE BRELAND: That is happening.
>
> SWAIM: – in Court.
>
> JUDGE BRELAND: I have tried and tried and tried, for the record, to speak to Mr. Reposa about his conduct in Court. There is nothing I can do about his conduct out of Court, but there are things I can do about his conduct in Court. He insults me time after time after time, then comes in and apologizes. I have accepted his apologies many times. And I understand that he has probably got a lot going on, but we all have a lot going on. This ripped it. For the record, I am holding him in contempt – direct contempt of this Court.

During the contempt hearing, the applicant acknowledged that a "simulated masturbatory gesture" was a good way to describe his action in court.

## I. Notice

In his first ground, the applicant alleges that he was denied due process and due course of law because he was denied unambiguous notice prior to trial of what the State would have to show to prove him guilty of contempt.

On March 26, 2008, the State served the applicant notice of his contempt hearing, scheduled for April 3, which included a letter, the Judgment of Criminal Contempt of Court ("Judgment") signed by Judge Breland, and the Official Notice of Basis of Accusation of Contempt of Court ("Official Notice"). The letter informed the applicant that the hearing had been "scheduled to determine the guilt or innocence and punishment for the alleged contemptuous and contumacious conduct as set out in the enclosed notice and Contempt of Court order."

The Judgment stated, in pertinent part:

On March 11, 2008, the State moved the Court to hold Adam Reposa, counsel for Defendant, in Contempt of Court for his intentional and contumacious conduct during the Court's review of the plea bargain offer to his client before jury trial. Defense counsel Reposa made a simulated masturbatory gesture with his hand while making eye contact with the Court in response to an objection by the State to his interference with the Court's plea bargain inquiry. The Court acknowledged on the record witnessing the gesture. Richard Gentry, a State's attorney during the proceeding, also witnessed the gesture and acknowledged so on the record. Subsequently, the State moved that defense counsel Adam Reposa be held in direct contempt of court for making an obscene gesture in the presence of and at the Court.

The Official Notice alleged the following as the basis of the accusation:

On March 11, 2008, Adam Reposa, while appearing as counsel for [the client], in the presence of Judge Jan Breland, presiding as judge of Travis County Court at Law Number Six, made a simulated masturbatory gesture with his hand while making eye contact with Judge Breland in response to an objection by the State to his interference with Judge Breland's plea bargain inquiry. This gesture was made after the Court admonished Mr. Reposa several times to quit interfering with the Court's colloquy with the Defendant.

The applicant claims that the difference between these two documents renders ambiguous the specific conduct to which he had to answer, "whether it was the gesture in isolation, a gesture made toward the prosecution, a gesture made toward the judge, the purpose or effect of the gesture, whether there had been multiple admonishments by the trial court prior to the gesture, or any or all of the above in some combination." He maintains the issue was further confounded by Judge Davis's decision at the contempt hearing to strike the "charging instrument," that is, the Official Notice, and proceed on the Judgment alone.

Due process demands that direct contemnors, those whose contumacious acts occur in the presence of the court, be afforded reasonable notice of the specific charges and an opportunity to be heard before being finally adjudicated in contempt and sentenced.[4] The question here is, what notice is adequate?

This court has held that notice was insufficient where the show-cause order failed to state the specific charges against the attorney applicant; the order merely told the applicant to appear on a specified date for a contempt hearing.[5] We have also held notice not to have comported with due process where the attorney applicant was neither served with a show cause order nor informed of the charges; the trial court simply called the applicant to appear to make a "'last words' type of statement."[6]

---

[4] *Taylor v. Hayes*, 418 U.S. 488, 498-500 (1974); *Ex parte Knable*, 818 S.W.2d 811, 812-14 (Tex. Cr. App. 1991); *Pink*, 645 S.W.2d, at 264.

[5] *Pink*, 645 S.W.2d, at 264-65.

[6] *Ex parte Avila*, 659 S.W.2d 443, 445 (Tex. Cr. App. 1983). *Avila* was a case of constructive, or indirect, rather than direct contempt, but the decision in *Taylor v. Hayes* and the procedure provided for an officer of the court in Gov't Code § 21.002(d) obscure the procedural distinction between direct and constructive contempt (*Avila*, 659 S.W.2d, at 444; *Pink*, 645 S.W.2d, at 264).

At the beginning of the contempt hearing in the present case, the applicant objected that the Official Notice and the Judgment stated different conduct. In response, Judge Davis struck the Official Notice and stated he was proceeding on the Judgment. He clarified:

> [W]hat I'm ruling is that the Court cannot find that it was contemptuous of Mr. Reposa to interfere with the Court's colloquy with the defendant after being admonished.
>
> Basically, we have a contempt finding by Judge Breland that Mr. Reposa made a simulated masturbatory gesture with his hand while making eye contact with the Court in response to an objection by the State to his interference with the Court's plea bargain inquiry. That's the contempt allegation. And that's what we'll be proceeding on.

We find the applicant's contention, that the notice documents and Judge Davis's ruling are so equivocal on the subject of the specific conduct with which he is charged that it rises to the level of a due-process violation, to be without merit.

The Judgment specified the "intentional and contumacious conduct" to be the following: "Defense counsel Reposa made a simulated masturbatory gesture with his hand while making eye contact with the Court in response to an objection by the State to his interference with the Court's plea bargain inquiry." The Official Notice contained virtually identical language. The alleged contumacious conduct seems very clear: "a simulated masturbatory gesture with his hand while making eye contact with the Court." And if there had been any doubt about the precise conduct at issue, Judge Davis only confirmed, rather than further confused, the specific charge.

The remaining language in both documents describes the circumstances surrounding the conduct, but those circumstances do not constitute the alleged contumacious act itself. For instance, the sentence in the Official Notice that states the applicant made the gesture after being admonished several times merely puts the conduct in the context of the surrounding events. The

fact of being admonished several times was clearly not the alleged contumacious act itself, nor was it a contested issue.

We hold that the applicant was afforded reasonable notice of the charges against him, consistent with due process and due course of law.

## II. Evidence Sufficiency

In his second ground, the applicant claims the evidence was insufficient to support his conviction "under what was most likely the charging instrument in the case." Specifically, he asserts that the State failed to prove beyond a reasonable doubt the allegation in the Judgment that he made "an obscene gesture in the presence of and *at* the Court," particularly given that Judge Breland acknowledged the gesture was not directed at her. Alternatively, the applicant claims the gesture alone is insufficient to constitute criminal contempt. He argues the gesture is equivalent to speech and, like an offensive comment, is not contumacious unless it is disruptive or boisterous. Nor did the gesture rise to the level of contempt, he says, by hindering the forward progress of a trial or interfering with the orderly administration of justice.

Contempt of court is categorized as either criminal or civil.[7] The present case involves criminal contempt. The Texas contempt statute, Government Code Section 21.002, encompasses both criminal and civil contempt, but it neither defines criminal contempt nor delineates what conduct constitutes contempt. Texas courts, however, have long had inherent power to find and

---

[7] Criminal contempt has been distinguished from civil contempt as being "punitive in nature. The sentence is not conditioned upon some promise of future performance because the contemnor is being punished for some completed act which affronted the dignity and authority of the court." *In re Dotson*, 76 S.W.3d 393, 395 n.3 (Tex. Cr. App. 2002).

punish for contempt. This power is "broad and plenary."[8] "Although the exercise of this authority should be tempered with common sense and sound discretion, nevertheless we accord the judge's contempt power wide latitude because it is essential to judicial independence and authority."[9]

This court has addressed two general types of contumacious conduct by attorneys in the courtroom. The more recent cases of criminal contempt have turned on whether the conduct obstructed the administration of justice or hindered the forward progress of a trial.[10]

Despite this focus, however, we have never rejected another category of conduct, disrespect for the court, and acts which bring the court into disrepute, as a legitimate basis for a finding of criminal contempt. On the contrary, disrespect for the court has a long-established history in the Texas common law of contempt. For example, criminal contempt has been defined by our predecessor court as encompassing "all those acts in disrespect of the court, or of its process, or which obstruct the administration of justice, or tend to bring the court into disrepute."[11] The Texas Supreme Court has said, "Generally speaking, he whose conduct tends to bring the authority and administration of the law into disrespect or disregard, interferes with or

---

[8] *Ex parte Taylor*, 807 S.W.2d 746, 748 (Tex. Cr. App. 1991); *Ex parte Pink*, 746 S.W.2d 758, 761 (Tex. Cr. App. 1988); *Ex parte Jacobs*, 664 S.W.2d 360, 363 (Tex. Cr. App. 1984).

[9] *In re Bell*, 894 S.W.2d 119, 127 (Tex. Spec. Ct. Rev. 1995) (citing *Ex parte Daniels*, 722 S.W.2d 707, 709 (Tex. Cr. App. 1987)).

[10] *See e.g.*, *Taylor*, 807 S.W.2d 746 (defense attorney's reference to a person who "might go both ways" during cross-examination was not contempt where statement was not intentionally disrespectful and did not disrupt trial court); *Pink*, 746 S.W.2d 758 (defense attorney's alleged comment on the trial court's admonishment not to review the offense report with a police officer on cross-examination was not contempt because it did not "hinder the forward progress of the trial or obstruct or tend to obstruct the administration of justice"); *Ex parte Curtis*, 568 S.W.2d 363 (Tex. Cr. App. 1978) (district attorney's remarks during pretrial hearing that judge was biased toward the defendant held not to be contempt because they were not made in "boisterous tone," did not disrupt proceedings, and were relevant to issue of jury contamination under discussion). See also *Jacobs*, 664 S.W.2d, at 364 and *Ex parte Salfen*, 618 S.W.2d 766, 770 (Tex. Cr. App. 1981) ("The essence of 'contempt' is that the conduct obstructs or tends to obstruct the proper administration of justice.").

[11] *Ex parte Robertson*, 27 Tex. App. 628, 11 S.W. 669, 670 (Tex. Ct. App. 1889).

prejudices parties or their witnesses during a litigation, or otherwise tends to impede, embarrass, or obstruct the court in discharge of its duties is guilty of contempt."[12] And this court has stated, "It is peculiarly the duty of an attorney to maintain the respect due to courts and judicial officers, and any breach of this duty is a contempt."[13] We have also said,

> [W]e are certainly aware of the necessity for a judge of a court to preserve order and decorum, demand respect and enforce its mandates and decrees. There can be no doubt that the judge has the right to punish for contempt, and yet this right is not given for the private advantage of the judge but to preserve that respect in regard to which the court cannot be deprived and maintain its usefulness.[14]

Moreover, even our recent cases which were decided based on an attorney's obstructive conduct imply that disrespect is still a viable ground for establishing criminal contempt.

In *Taylor*, for instance, this court set aside the judgments of contempt in an analysis where we noted that the contempt power "should only be exercised with caution" and the "essence of 'contempt' is that the conduct obstructs or tends to obstruct the proper administration of justice."[15] But we also indicated that under a different set of facts, disrespectful conduct could rise to the level of contempt of court.

> Given all the circumstances in the present matter, we cannot conclude that the phrase "… or maybe somebody that might go both ways …" *was disrespectful or disrupting to the trial court to such an extent as to require contempt*. Furthermore, "[t]he fact that counsel pursues a method at variance with that which the court deems correct, *with no intended disrespect to the court*, should not be subject to a penalty for contempt." . . .

---

[12] *Ex parte Norton*, 191 S.W.2d 713, 714 (Tex. 1946).

[13] *Ex parte Morriss*, 10 S.W.2d 105, 107 (Tex. Cr. App. 1928).

[14] *Ex parte Davis*, 353 S.W.2d 29, 34 (Tex. Cr. App. 1962); *accord Ex parte Arnold*, 503 S.W.2d 529, 534 (Tex. Cr. App. 1974).

[15] 807 S.W.2d, at 748.

. . . .

Whether applicant's statement offended the court is not the test in contempt actions but *the act itself must be shown as intentionally disrespectful.* . . . This statement, in the context of the witness' examination, fails to show *disrespect in the manner of which contempt actions are made.*[16]

In *Pink*, we granted relief, finding that Applicant Pink's statement neither hindered the progress of the trial nor obstructed the administration of justice.[17] In so holding, we added that we could not conclude that the statement "constituted disrespect for the trial court such as to support a judgment of contempt."[18] We also noted that our decision was based solely on the words Pink used; the record gave no indication of the "attitude, demeanor or expression of the applicant Pink when using the language noted," implying that these factors might also have an impact on the determination.[19]

The Legislature too has recognized the authority of Texas courts to maintain dignity within its courtrooms. Section 21.001 of the Government Code, entitled "Inherent Power and Duty of Courts," provides in part:

(a) A court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the writs and orders necessary or proper in aid of its jurisdiction.
(b) A court shall require that proceedings be conducted with dignity and in an orderly and expeditious manner and control the proceedings so that justice is done.

In the present case, we address first the applicant's contention that the State failed to prove that he made "an obscene gesture in the presence of and *at* the Court." There is no question

---

[16] *Id.*, at 748-49 (emphasis added) (citations omitted).

[17] 746 S.W.2d, at 762.

[18] *Ibid.*

[19] *Ibid.*

that the applicant made a masturbatory gesture "in the presence of" the trial court; the applicant himself acknowledges the fact. But as to the applicant's claim that the State had to prove he directed the gesture "at" the trial court, we find it to be unfounded. The full sentence containing the phrase at issue reads, "Subsequently, the State moved that defense counsel Adam Reposa be held in direct contempt of court for making an obscene gesture in the presence of and at the Court." As we explained in our discussion of the applicant's first ground, this sentence is not part of the actual charge of contumacious conduct against the applicant, but rather describes the surrounding events. The sentence merely recounts the State's oral motion following the applicant's gesture, and therefore constitutes no part of the applicant's actions that the State must prove. This is further confirmed by the fact that the Official Notice, which provides the "basis of the accusation," does not include this language at all. We reject the applicant's allegation.

We likewise reject the applicant's claim that his gesture alone does not rise to the level of criminal contempt. The applicant's conduct is distinguishable from that of other attorney applicants whom we have held not to have been in contempt of court. It is clear from the context of the entire proceeding that, in making the masturbatory gesture, the applicant was not in any way performing his duty of zealously representing his client or advancing his client's case. Nor had he been placed in a position by the trial court where he was left with no other choice but to engage in the conduct or risk compromising the effective representation of his client. Instead, this was an intentionally disrespectful act serving no purpose but to insult the prosecutor. The applicant said at the contempt hearing that he thought he had a right to talk to his client. He could have served this purpose in any number of ways that did not involve an offense to the court – by simply asking Judge Breland for some time to speak with his client, for instance. Regardless, the

gesture itself was not aimed at gaining an opportunity to consult with his client, but rather as a direct response to the prosecutor's calling attention to his behavior. At the contempt hearing, the applicant described his acrimonious relationship with prosecutor Swaim and said that his gesture was directed at Swaim. He said that his intent at the time had been to communicate to Swaim "that I thought that at that point, he was just talking to himself and masturbating." The applicant agreed the gesture was disrespectful and out of line.

Regardless of the fact that the gesture was not directed at Judge Breland, it nevertheless was a purposeful act of disrespect and an affront to the dignity of the court. As such, it rises to the level of criminal contempt. We find the evidence to be sufficient to support the judgment of contempt.

### III. Criminal Procedure

The applicant's third ground claims he was denied due process and due course of law when Judge Davis "declined to follow criminal procedure in ascertaining applicant's guilt." He argues that standard rules of criminal procedure should have been followed in the contempt hearing. Specifically he says that he was entitled to a bifurcated proceeding as set out in the Code of Criminal Procedure, and that what is typically considered punishment evidence, including "inadmissible character conformity evidence," should not have been admitted during what should have been the guilt phase. He argues that the only relevant evidence concerned the events that occurred in the courtroom on March 11, but that Judge Davis erroneously admitted extraneous conduct evidence. He alleges that Judge Davis permitted no punishment evidence after the applicant was found guilty. The applicant urges, "Since Applicant cannot find another case where

extraneous conduct evidence of this extreme 'extraneousness' was put on in a criminal contempt proceeding or considered in assessing punishment, this is a case of first impression."

The contempt statute itself says little about the procedures to be followed during a contempt hearing, except to provide for a separate proceeding for an officer of the court where an assigned judge determines guilt or innocence–a hearing which was employed in the present case. This court has acknowledged that "contempt proceedings are quasi-criminal in nature," and as such, they "should conform as nearly as practicable to those in criminal cases."[20] This does not mean that contempt proceedings must be exact procedural replicas of their traditional criminal counterparts. Several constitutional protections do inhere, however, in a criminal contempt proceeding. Among them, alleged contemnors are constitutionally entitled to reasonable notice of the charges and an opportunity to be heard (see above), representation by counsel,[21] trial by jury in certain cases,[22] the Fifth Amendment right against self-incrimination,[23] and proof of guilt beyond a reasonable doubt.[24] But due process and due course of law are implicated neither by a criminal contempt proceeding that is non-bifurcated, nor by one that fails to strictly apply the Texas Rules of Evidence.

---

[20] *Ex parte Gonzales*, 945 S.W.2d 830, 836 (Tex. Cr. App. 1997).

[21] *In re Oliver*, 333 U.S. 257, 275 (1948), following *Cooke v. United States*, 267 U.S. 517, 537 (1925); *Ridgway v. Baker*, 720 F.2d 1409, 1415 (5th Cir. 1983).

[22] *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826-27 (1994); *Bloom v. Illinois*, 391 U.S. 194 (1968).

[23] *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911).

[24] *Ibid.*

The Texas bifurcated procedure is a legislative construct governed by statute,[25] rather than a procedure which is afforded constitutional protection. The contempt statute does not specify a bifurcated proceeding. In fact, the provision in Section 21.002(d) for officers of the court contemplates a unitary proceeding in which the assigned judge determines guilt or innocence. Implicit in the statute is that the judge also assesses punishment, thereby authorizing the presentation of punishment evidence as part of the proceeding. Additionally, the bifurcation statute does not apply to a trial without a jury.[26] The applicant was neither constitutionally nor statutorily entitled to a bifurcated contempt proceeding.

Likewise, application of the Texas Rules of Evidence to a contempt proceeding has no constitutional significance. Had the applicant been prevented from putting on a defense alto-gether, the hearing would have run afoul of the U.S. Constitution, which guarantees criminal contemnors the "right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed."[27] But that is not the case here; the applicant was not prevented from calling witnesses nor from presenting a defense.

Furthermore, the Texas Rules of Evidence expressly state that they are inapplicable to the applicant's case. Rule 101(d), entitled "Special Rules of Applicability in Criminal Proceedings," provides:

> (1) Rules not applicable in certain proceedings. These rules, except with respect to privileges, do not apply in the following situations:

---

[25] *See* CODE CRIM. PROC. art. 37.07.

[26] *Barfield v. State*, 63 S.W.3d 446, 449-50 (Tex. Cr. App. 2001).

[27] *Cooke*, 267 U.S., at 537.

. . . .

(H) proceedings in a direct contempt determination.

Because the applicant's case is one of direct criminal contempt, Rule 101(d)(1)(H) governs.

There is neither a constitutional provision nor an evidentiary rule requiring further procedural protections than the applicant was afforded.

We reject the applicant's third ground.

### IV. Travis County Attorney's Office Recusal

In his fourth ground, the applicant claims he was denied due process and due course of law when Judge Davis declined to recuse Travis County First Assistant County Attorney Randy Leavitt and the Travis County Attorney's Office.[28]

The record reflects that when the motion to recuse was discussed as a preliminary matter at the contempt hearing, the applicant argued for Leavitt's disqualification as the prosecutor of this contempt case, based on the claim that he was not a "disinterested prosecutor." The applicant also urged the disqualification of the entire Travis County Attorney's Office by extension. The applicant's counsel asked the judge that he be allowed to put on evidence on the motion and was permitted to make a proffer.

Counsel recounted an incident which he said had occurred five or six months earlier. The applicant represented a client who had two DWI cases pending with the Travis County Attor-

---

[28] We note that, although the applicant referred to both "recusal" and "disqualification" at the contempt hearing and in his application, what he seems to be arguing is that Judge Davis should have disqualified Mr. Leavitt and the Travis County Attorney's Office. A prosecutor may voluntarily recuse himself, but that responsibility lies with the prosecutor. *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 6 (Tex. Cr. App. 1990) (plurality opinion). A trial court "has no authority to force a recusal." *Johnson v. State*, 169 S.W.3d 223, 229 (Tex. Cr. App. 2005).

ney's Office, which he believed to be strong cases for the defendant and claimed the prosecutor agreed. He and the prosecutor met with Leavitt to discuss the resolution of the case.

> And Mr. Leavitt's attitude, when Mr. Reposa walked in, was that, okay, Mr. Reposa, you're here. Apparently you're here looking for a favor to get these cases dismissed and, you know, you've been trying all these breath-test cases and just taking up the Court's time, words to that effect, I mean, that – that kind of tenor of the conversation, in other words, alluding to the fact that Mr. Reposa, you know, tries cases, lots of cases, and tries cases that other lawyers may think are – are losers. And so the tenor from the County Attorney was – is, you're – here you are trying all these cases, now you want a favor from us to dismiss these cases.
>
> . . . .
>
> But it showed – our intent is to show the Court that it showed certain prejudice against Mr. Reposa because of the fact that he was trying cases and even trying breath-test cases which, presumably, I guess the County Attorney feels they should always win if they're over the limit. Mr. Reposa tries them anyway. And so this was five or six months ago.
>
> So it appeared to be at least, even then, some attitude towards Mr. Reposa that, Hey, man, what are you doing? You're wasting our time, you're trying these cases, and now here you are asking for a favor on these other two cases.
>
> And so that was – that's kind of where we're going with Mr. Leavitt as to, you know, why the attitude about things that have nothing to do with those two cases at hand at the time.
>
> And here we are six months later in another matter which, you know, that the merits are obviously questionable. So that's what we're going into for that.
>
> Lastly, Judge, we've – we've tried to resolve this matter. And, again, the tenor from the County Attorney was . . . [w]e want nothing but a contempt finding. And so it appears that there is some sort of ax to grind against Mr. Reposa because of, I suppose, his success of winning cases in their courts in the past three or four months.

Counsel also raised the following as rationale:

> Your Honor, one thing that I also seek to establish with testimony by Mr. Leavitt on this issue is that, routinely, in criminal cases, in the County Attorney's Office, the County Attorney reaches dispositions that do not involve findings, be it contempt or findings of guilt. They do deferred prosecutions, they do agreements at the County Attorney's Office with shoplifters, marijuana users, wife beaters, assault cases, where cases get dismissed after counseling and things of that nature.
>
> And so the mere fact that, in this case, none of that is available as an option shows, at least on its face, some bias towards Mr. Reposa. And that's what we want to explore, is to what the reason is we believe that there is a bias and prejudice and

that his due process rights under both the U.S. and State constitutions are being violated.

If – if their job is to see that justice is done, not to get a conviction, then in this case the only thing they're happy with is a conviction for criminal contempt. That's the only way the matter gets resolved in their eyes. And so that, to me, raises an issue, okay, what is the personal bias you have against Reposa that you would offer nothing other than such a – such a disposition, when you do this routinely in other cases much – just serious cases like assaults and other types of things?

Judge Davis overruled the motion.

In his brief, the applicant further argues that prosecutor Swaim was the clear movant in the contempt proceeding. He also contends that Leavitt was "out to get" the applicant, as evidenced by the fact that he injected his personal feelings into the proceeding and testified on behalf of Judge Breland, himself, and the County Attorney's Office; he used the hearing as a vehicle to discuss personal relationships, to the applicant's detriment; and he used the hearing in order to gather evidence from which to launch a State Bar complaint against the applicant on issues unrelated to the contempt charge. The applicant also points to Leavitt's introduction of extraneous evidence, which he argues was well outside the scope of the contempt case, as additional proof that Leavitt had a personal bias against him for going to trial on all of his cases. According to the applicant, "The vast amount of evidence about personal matters in this hearing amounted to a violation of due process," for which the Travis County Attorney's Office should have either recused itself or been recused.

An appellate court reviews a trial court's decision to disqualify a prosecutor under an abuse of discretion standard.[29] A trial court abuses its discretion when the decision lies "outside the zone of reasonable disagreement."[30]

When an alleged conflict of interest is at issue, a district attorney or his or her staff may not be disqualified unless an actual conflict of interest exists and that conflict rises to the level of a due-process violation.[31] There is no bright-line rule for making such a determination.

The United States Supreme Court has said, "An arrangement represents an actual conflict of interest if its potential for misconduct is deemed intolerable."[32] This court has clearly deemed intolerable the situation where a prosecutor represents the State in prosecuting someone he previously represented in the same case.[33] There, "the conflict of interest is obvious and the integrity of the prosecutor's office suffers correspondingly."[34] Such a conflict amounts to a denial of due process under the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the Texas Constitution, and warrants automatic disqualification of the prosecutor without necessitating a showing of prejudice.[35]

---

[29] *Landers v. State*, 256 S.W.3d 295, 303 (Tex. Cr. App. 2008).

[30] *Ibid.*

[31] *Id.*, at 305, 310.

[32] *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 n.18 (1987).

[33] *Ex parte Morgan*, 616 S.W.2d 625 (Tex. Cr. App. 1981); *Ex parte Spain*, 589 S.W.2d 132 (Tex. Cr. App. 1979).

[34] *Spain*, 589 S.W.2d, at 134.

[35] *Ibid.*; *Landers*, 256 S.W.3d, at 304.

In other situations, the conflict is not so obvious as to require automatic disqualification, and the defendant must establish a due-process violation by showing "actual prejudice."[36] For instance, a county attorney was not disqualified from assisting in the prosecution of a rape charge against a defendant whom he had previously represented in a separate rape case, where "there was absolutely no discussion of the facts of the instant case."[37] And in *Landers*, a case in which the district attorney prosecuted a defendant whom he had previously represented in a separate case, we said that an "actual conflict of interest" is demonstrated when, "as a result of that former attorney-client relationship, the prosecution has obtained confidential information which may be used to the defendant's detriment at trial."[38] We found no confidential information to have been used in *Landers*, and therefore, we concluded that the appellant failed to establish a due-process violation.[39]

The opinions discussed above represent some of the more typical conflict-of-interest cases in the context of prosecutor disqualification. Much less common is the scenario the instant case presents, one which this court has not previously addressed, in which the conflict of interest is alleged to have arisen from the prosecutor's personal bias or grudge against the defendant. This claim is not one that, like those in *Spain* and *Morgan*, represents an obvious conflict on its face, which merits automatic disqualification. Instead, the applicant must demonstrate that an actual

---

[36] *Landers*, 256 S.W.3d, at 304-05.

[37] *Munguia v. State*, 603 S.W.2d 876, 878-79 (Tex. Cr. App. 1980).

[38] *Landers*, 256 S.W.3d, at 305, *quoting State v. Camacho*, 329 N.C. 589, 601, 406 S.E.2d 868, 875 (1991).

[39] *Id.*, at 310.

conflict of interest existed which prejudiced him in such a manner as to rise to the level of a due-process violation.

In *Marshall v. Jerrico*, the Supreme Court noted that, although due process guarantees an "impartial and disinterested tribunal in both civil and criminal cases,"[40] the standards of neutrality that apply to judges are not so stringently required of prosecutors.[41] "Prosecutors need not be entirely 'neutral and detached[.] In an adversary system, they are necessarily permitted to be zealous in their enforcement of the law."[42] The Court recognized, however, that the Due Process Clause nevertheless places limits on the "partisanship of … prosecutors."[43] "A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions."[44] Although the Court found due process not to have been violated in that case and declined to specify what the limits on a prosecutor's personal interest might be,[45] it left open the possibility that "different considerations might be held to apply if the alleged biasing influence contributed to prosecutions against particular persons, rather than to a general zealousness in the enforcement process."[46]

---

[40] 446 U.S. 238, 242 (1980).

[41] *Id.*, at 248.

[42] *Ibid.*

[43] *Id.*, at 249.

[44] *Id.*, at 249-50.

[45] *Id.*, at 250.

[46] *Id.*, at 250 n.12.

In the instant case, Judge Davis did not abuse his discretion in overruling the applicant's motion to disqualify Leavitt and the Travis County Attorney's Office.

First, Swaim was not the "clear movant" in the contempt proceeding, as the applicant claims. The record reflects that Judge Breland had already found the applicant in contempt when Swaim made the motion. Even if Travis County had been considered the official movant, this does not prove any particular bias. The contempt action and proceedings were triggered by Judge Breland, the contempt statute, and the applicant's own actions in invoking the statutory provisions.

Second, Leavitt did not testify as a witness during the contempt hearing. The only witness from the Travis County Attorney's Office to have testified was Swaim, who was called by the applicant himself. Leavitt's argument on behalf of the State prior to punishment did not render him a witness in the case, thereby subjecting him to potential disqualification as prosecutor.

Third, the record does not support the applicant's contention that Leavitt used the hearing to gather evidence from which to make a State Bar complaint. The applicant cites as proof a letter he received from the State Bar of Texas–dated the day Judge Davis assessed the contempt sentence–and a copy of the evidence that formed the basis of the State Bar complaint. The applicant says, "In *Texas Lawyer* [a magazine], Mr. Leavitt denied that he personally contacted the State Bar, although it is clear that the … material could have no purpose other than to prejudice Mr. Reposa at this contempt trial and support the bar action initiated that same day." Nothing in the record points to Leavitt or any other prosecutor as the initiator of the State Bar complaint nor convinces us of the applicant's allegation.

Next, we reject the applicant's allegation that Leavitt demonstrated personal bias by failing to offer the applicant an agreement instead of pushing for conviction. It is part and parcel of a prosecutor's discretion to make decisions about agreements in lieu of trial and/or conviction with regard to individual defendants. These decisions are particular to each case and individual. Many factors may have contributed to the decision in the applicant's case, but nothing in the record leads us to believe that one or more of these factors involved improper personal bias.

Finally, the bulk of the applicant's claim that Leavitt was not a "disinterested prosecutor" seems to turn on alleged prosecutorial overreaching and overly zealous prosecution, including introducing extraneous evidence. But a prosecutor who zealously seeks a conviction is not inherently biased or partial.

> [A] prosecutor need not be disinterested on the issue whether a prospective defendant has committed the crime with which he is charged. If honestly convinced of the defendant's guilt, the prosecutor is free, indeed obliged, to be deeply interested in urging that view by any fair means. True disinterest on the issue of such a defendant's guilt is the domain of the judge and the jury–not the prosecutor. It is a bit easier to say what a disinterested prosecutor is not than what he is. He is not disinterested if he has, or is under the influence of others who have, an axe to grind against the defendant, as distinguished from the appropriate interest that members of society have in bringing a defendant to justice with respect to the crime with which he is charged.[47]

We perceive no special interest or particular axe to grind on Leavitt's part beyond a prosecutor's legitimate interest in advancing the State's case, "by any fair means," toward the end of conviction. None of the anecdotal evidence the applicant has presented establishes bias that rises to the level of a due-process violation. Leavitt was permitted by statute and obliged by his office, for instance, to present the "extraneous" evidence he believed relevant to punishment

---

[47] *Wright v. United States*, 732 F.2d 1048, 1056 (2d Cir. 1984) (citation omitted).

during the contempt hearing. The fact that he offered the evidence and Judge Davis chose to admit it does not indicate any special prosecutorial bias. But even if we had perceived prosecutorial overreaching, we would find no actual conflict of interest such as is requisite to compel disqualification. The U.S. Supreme Court has noted:

> It is true that prosecutors may on occasion be overzealous and become overly committed to obtaining a conviction. That problem, however, is personal, not structural. . . . [S]uch overzealousness "does not have its roots in a conflict of interest. When it manifests itself the courts deal with it on a case-by-case basis as an aberration. This is quite different from approving a practice which would permit the appointment of prosecutors whose undivided loyalty is pledged to a party interested only in a conviction."[48]

The applicant has failed to establish that Leavitt had an improper personal stake or interest in the case that was inconsistent with a prosecutor's duty and that deprived him of his right to a disinterested prosecutor. Nor has he established any structural conflict of interest that represents a violation of his due-process rights. Judge Davis did not abuse his discretion in denying the applicant's motion, and the applicant's rights to due process and due course of law were not violated by that denial.

## V. Sentence

In his fifth ground, the applicant claims that the sentence imposed violated his Eighth Amendment rights, essentially because it was disproportionate to the offense and it was excessive, having been based on extraneous evidence not relevant to the contumacious act itself.

In particular, the applicant alleges that he "received an excessive sentence relative to what other attorney/contemnors have received in other cases." He contends that the excessive sentence resulted from and was clearly based on improper consideration of all the alleged misdeeds of "his

---

[48] *Young*, 481 U.S., at 807 n.18.

entire profession[al] life," rather than only a single act of contempt. Most of the extraneous evidence presented at the hearing, he says, was irrelevant to both guilt and punishment, but Judge Davis clearly considered such evidence when imposing sentence. He argues that the sentence is disproportionate to the act and that it is "just too much."

The applicant also alleges that Judge Davis intended the punishment to be coercive, in addition to being punitive, running counter to longstanding Supreme Court precedent. This intent is evidenced, he says, by Judge Davis's own comment regarding punishment considerations: "How do I, as a representative of the court process, work to make sure that you get it and to get to whatever the underlying problems are . . . that might cause this to occur."

First we briefly address the applicant's allegation that Judge Davis intended the punishment to be coercive. Neither the record nor the comment the applicant cites reflects any intention to impose a coercive sentence within the meaning of contempt jurisprudence. Indeed, the difference between criminal and civil contempt centers on the nature of the punishment. As we said,[49] criminal contempt by its very nature is punitive. Criminal contempt sentences are "imposed for the purpose of vindicating the authority of the court."[50] Punishment is assessed for a completed act and is not conditioned on the contemnor's promise of some future performance. Civil contempt, on the other hand, is characterized as "coercive" because the punishment is conditioned upon the contemnor obeying the court's order and therein performancing some future act.[51] Judge Davis was certainly well aware of this distinction. And the fact that, in

---

[49]See note 7, *supra*.

[50] *United States v. United Mine Workers of America*, 330 U.S. 258, 302 (1947).

[51] *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976).

determining the sentence, he was motivated at least in part by the desire to deter such conduct in the future does not signify he intended to coerce the applicant.

Next we address the applicant's contention that his sentence was unconstitutionally disproportionate to his contumacious act. Texas courts have long held that a sentence which falls within the statutorily prescribed range of punishment is not cruel and unusual under the Constitution, nor does it "render the punishment excessive and insupportable."[52] We have even applied this rule to a claim similar to the applicant's claim that his sentence was excessive relative to other attorney-contemnors. In *Gonzales v. State*, we found the appellant's contention to be without merit, based on the above-stated principle, that his sentence constituted cruel and unusual punishment because it was so much greater than his codefendants.[53]

This rule is limited, however, by the gross-disproportionality principle embodied in the Eighth Amendment's Cruel and Unusual Punishments Clause, applicable to noncapital sentences, which proscribes punishments that are disproportionate to the crime.[54] "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."[55] Although the Supreme Court has acknowledged that its case law "exhibit[s] a lack of clarity regarding what factors may

---

[52] *Gaines v. State*, 479 S.W.2d 678, 679 (Tex. Cr. App. 1972). *See also e.g., Jordan v. State* (495 S.W.2d 949, 952 (Tex. Cr. App. 1973); *Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Cr. App. 1972).

[53] 501 S.W.2d 644, 646 (Tex. Cr. App. 1973).

[54] *Solem v. Helm*, 463 U.S. 277 (1983).

[55] *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring).

indicate gross disproportionality,"[56] it is firmly established that the principle is "applicable only in the 'exceedingly rare' and 'extreme' case."[57]

In the applicant's case, nothing in the record indicates that the sentence he received falls into that narrow category of extraordinary cases contemplated by the Supreme Court's gross-disproportionality jurisprudence. His sentence of ninety days is in the middle of the range of punishment permitted by the contempt statute.[58] Judge Davis had broad discretion to assess punishment within that legislatively-prescribed range,[59] and he was permitted to consider among sentencing factors, "the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future."[60] The evidence presented at the contempt hearing demonstrated that the applicant had a history of misconduct. Judge Breland testified that she had tried to correct the applicant's behavior several times in the past by discussing his courtroom conduct with him, suggesting alternatives, giving him warnings, reprimanding him, and finally, expelling him from the courtroom. Judge Davis made it clear that he wanted the sentence to send a message in order to prevent the applicant's conduct from continuing in the future.

Judge Davis was also in the best position to evaluate the applicant's demeanor and evaluate his sincerity in accepting responsibility for his actions. Leavitt asked Judge Davis to take

---

[56] *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).

[57] *Lockyer*, 538 U.S., at 73 (quoting *Harmelin*, 501 U.S., at 1001 (Kennedy, J., concurring)).

[58] GOV'T CODE § 21.002(b) provides: "The punishment for contempt of a court other than a justice court or municipal court is a fine of not more than $500 or confinement in the county jail for not more than six months, or both such a fine and confinement in jail."

[59] *See Barrow v. State*, 207 S.W.3d 377, 381-82 and n.20 (Tex. Cr. App. 2006).

[60] *United Mine Workers*, 330 U.S. 258.

into consideration in assessing punishment: "[T]he one thing I don't want to happen, Judge, is for him to leave here with this finding of contempt and wear it around as a badge of honor, which I'm afraid he's going to try to do, because I think he enjoys every moment of this." Judge Davis had discretion and was best situated to consider all of these factors when he assessed the applicant's sentence. We reject the applicant's disproportionality claim.

The applicant also argues that the sentence was excessive, given the particular circumstances here present.

During the contempt hearing, Leavitt asked the applicant, "Were you placed on some type of probation as you were first put – given your law license?" The applicant's counsel objected on relevance. Judge Davis heard the testimony prior to ruling on the objection. The applicant testified: "I have had mental health issues in the past. I didn't file my declaration of intent, my application until my third year of law school. And the State Bar wanted me to have an attorney monitor who deals with mental health issues and substance abuse issues." Judge Davis sustained the objection as to the reason for the attorney monitor–that is, as to the mental health issues–but overruled the objection as to the fact of an attorney monitor.

However, prior to imposing the sentence, while discussing the basis for his determination, Judge Davis said, "And I heard some evidence yesterday about other issues and other problems and concerns, and you talked some about some mental health things and other things like that. And so part of me says, "Well, let's try to get to the bottom of it."

It is clear that Judge Davis based the applicant's sentence, to some extent, on evidence of the applicant's mental health issues, which he had excluded as evidence during the hearing. The

admission of that evidence would have been within the judge's discretion, and the consideration of it in assessing punishment would not have made the punishment excessive.

## Conclusion

The relief requested is denied.


Delivered October 28, 2009.
Do not publish.